Robert Thomas BARNES,
Petitioner-Appellant,

v.

James A. LYNAUGH, Interim Director,
Texas Department of Corrections, and
Jim Mattox, Attorney General of State
of Texas, Respondents-Appellees.

No. 86–2358
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 22, 1987.
Rehearing Denied July 8, 1987.

Robert Thomas Barnes, pro se.

M.H. Montelongo, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondents-appellees.

Before POLITZ, WILLIAMS, and JONES, Circuit Judges.

POLITZ, Circuit Judge:

Robert Thomas Barnes pled guilty to aggravated sexual assault of a minor and, pursuant to a plea agreement, as a repeat sexual offender he was sentenced to prison for 25 years. His 28 U.S.C. § 2254 application for federal habeas relief asserts that the prosecutor withheld *Brady* material, his appointed defense counsel was ineffective, and he was denied his right to appeal. The district court rejected his application and denied a certificate of probable cause. We granted CPC. Having completed our review of the entire record, we now affirm.

### Background

Barnes was indicted for aggravated sexual assault, Tex.Penal Code Ann. §§ 22.011 and 22.021, and indecency with a child, § 21.11, involving his six-year-old daughter, Christy. The date of the offense was May 31, 1984. Barnes had been convicted of indecency with a child in 1982. Defense counsel was appointed and he promptly consulted Barnes and reviewed the files of the prosecutor and of the Texas Department of Health and Human Resources, including two videotaped interviews of the young victim. Defense counsel made his findings known to Barnes and from the beginning their discussions focused on efforts to secure the best possible plea bargain. The fact that Barnes was a repeat offender was given substantial consideration.

During an early interview, Barnes gave his attorney a list of ostensible favorable witnesses, including Bertha L. Martin, identified as either Barnes's girlfriend or common-law wife. In fact, Martin had initiated the child abuse complaint that led to Barnes's indictment and was expected to be a key prosecution witness. Counsel considered the other witnesses to be character witnesses, for there was no indication that any of them had actual knowledge of the events surrounding the offenses charged.

During their first discussions, Barnes told his attorney he had seen a medical report that tended to negate sexual abuse. Counsel moved for production of all favorable reports. The motion was granted but neither the prosecutor nor the caseworker had a medical report in their files. Both denied knowledge of any such report.

Barnes decided to plead guilty, but when brought into court on December 17, 1984 for that purpose he was reluctant to proceed and asked to speak with Martin, who was then in the courtroom. A private discussion between the two was arranged and thereafter Barnes informed his attorney that he was prepared to plead guilty and accept the outstanding plea bargain. The state agreed to drop the indecency count and to recommend a 25-year sentence. The record reflects a careful and painstaking guilty plea proceeding in which Barnes was fully advised of his rights and knowingly waived those rights, orally and in writing.

Sentenced to 25 years, Barnes sought collateral relief from the state court. After exhausting his state remedies he brought the present action, *pro se*, claiming

constitutional violations of due process and of his right to effective assistance of counsel. He continued to press his claim for the medical report. The magistrate concluded that it did not exist and his application was denied.

While this appeal was pending, Barnes secured a medical report dated 6–14–84 from the Bexar County Hospital and attached it to his appellate brief. This apparently is the report that Barnes saw prior to his indictment and made the subject of his motion to produce. For some reason not reflected by the record, this report was not known to the prosecutor, nor was it a part of his file prior to the guilty plea proceeding.

As gleaned from the medical report, Christy Barnes was examined by a physician at Bexar County Hospital on June 17, 1984, two weeks after the reported incident occurred. Accompanied by a caseworker, she was given a thorough general examination and was examined for signs of sexual abuse. Other than injury to a finger, requiring minor treatment, she was diagnosed a "well child." Accepting Barnes's interpretation *per arguendo*, the report noted that the child's hymen was intact, there were no bruises, and all symptoms or indicators of sexual intercourse or abuse were negative. Urine, rectal, vaginal, and throat cultures were all negative.

### Analysis

Barnes maintains that this finally surfacing medical report is *Brady* material and the state's failure to produce it timely taints the voluntariness of his guilty plea. He further contends that the existence of the report buttresses his claim of ineffectiveness of counsel, the latter being also based on counsel's failure to interview potential witnesses.

The state maintains that entry of the guilty plea forecloses any claim of a *Brady* violation. A guilty plea waives, *inter alia,* the right to trial by jury, confrontation of accusers, and compulsory attendance of witnesses. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Typically, a valid guilty plea bars habeas review of claims relating to constitutional rights that arose prior to the entry of that plea. *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Long v. McCotter,* 792 F.2d 1338 (5th Cir.1986).[1] But one who pleads guilty may challenge both subsequent constitutional violations and antecedent constitutional intrusions that reflect on "the very power of the State to bring the defendant into court to answer the charge brought against him." *Blackledge v. Perry,* 417 U.S. 21, 30, 94 S.Ct. 2098, 2103, 40 L.Ed.2d 628, 636 (1974) (prosecutorial vindictiveness claim). *See also Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (double jeopardy claim); *Lefkowitz v. Newsome,* 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975) (state law permits claim to be raised on appeal); *Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983) (§ 1983 claim for fourth amendment violations). Further, the voluntariness of the guilty plea may be examined, *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

We need not resolve today the conundrum involving the teachings of *Brady* and its progeny and the usual finality of a guilty plea, for we are persuaded that Barnes suffered no prejudice by the state's failure to produce the medical report attached to his brief.[2]

The rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215

---

1. In *Tollett,* 411 U.S. at 267, 93 S.Ct. at 1608, 36 L.Ed.2d at 243, the Supreme Court stated:
    When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by

showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) ].

2. The Sixth Circuit has addressed this issue. *Campbell v. Marshall,* 769 F.2d 314 (6th Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1268, 89 L.Ed.2d 576 (1986).

(1963), requires the state to disclose to the defendant all favorable evidence material either to guilt or punishment. Suppression of favorable, material evidence denies a defendant's constitutional right to due process. *Brogdon v. Blackburn,* 790 F.2d 1164 (5th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1985, 95 L.Ed.2d 824 (1987). Suppressed evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481, 494 (1985). *See also Lindsey v. King,* 769 F.2d 1034 (5th Cir.1985).

[redacted] A painstaking review of the medical report, viewed in a light most favorable for Barnes, leads inexorably to the conclusion that there is no reasonable probability that anything contained therein would have militated against entry and acceptance of the guilty plea. The contents of that report must be considered against the backdrop of controlling Texas law and the undisputed evidence of guilt available to the state.

Section 22.011(a)(2) of the Texas Penal Code defines the offense of sexual assault to include instances where one:

> intentionally or knowingly:
>
> (A) causes the penetration of the anus or female sexual organ of a child by any means;
>
> (B) causes the penetration of the mouth of a child by the sexual organ of the actor; or
>
> (C) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor.

The crime becomes aggravated sexual assault if the child is younger than 14 years of age. Tex.Penal Code Ann. § 22.021(a)(5).

Treatment of these statutes by the Texas courts has been unequivocal: penetration, where charged, need only be minimal. As the court held in *Villanueva v. State,* 703 S.W.2d 244, 245 (Tex.Ct.App.1985), "evidence of only the *slightest* penetration of the vagina ... will support a conviction for sexual assault." (emphasis in original). *See also Martinez v. State,* 662 S.W.2d 393 (Tex.Ct.App.1983); *Garcia v. State,* 563 S.W.2d 925 (Tex.Crim.App.1978). In *Villanueva,* the court concluded that medical evidence indicating a lack of scars or physical signs on the victim was not inconsistent with the conviction for sexual assault because slight penetration leaving no physical signs would suffice to sustain a conviction.

The medical report proffered by Barnes was made two weeks after the date of the charged offense. That the child then was well and demonstrated no physical signs of sexual abuse does not lead us to the conclusion that it is reasonably probable that possession of the report and the information it contained would have caused Barnes to forego entry of his guilty plea and stand trial. In the light of the charge, the inculpatory evidence, and controlling Texas law, this attenuated negative evidence wanes into insignificance. We perceive no *Brady* violation.

[redacted] Nor do we find any validity to the claim of ineffective assistance of counsel. To succeed in this claim Barnes must establish that but for the errors of his counsel he would not have pleaded guilty. In *Hill v. Lockhart* the Supreme Court applied the two-part standard earlier enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and added that where, as in the instant case,

> the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

474 U.S. at —, 106 S.Ct. at 370–71, 88 L.Ed.2d at 210. As stated above, because

the medical report had only limited relevance to the question whether Barnes sexually assaulted his minor daughter, as that offense is defined by Texas law, the failure of his counsel to discover its existence occasioned no prejudice as envisioned in *Hill v. Lockhart.*

The same applies to Barnes's contention that his counsel failed adequately to interview potential witnesses. According to the tendered affidavits, the witnesses were either character witnesses or would have testified that they knew Barnes and the child and were aware of no sexual abuse. None had actual knowledge of the events surrounding the offenses charged. Such evidence, assuming it was credible, would become meaningless when weighed against the statements of the witnesses prepared to testify on behalf of the state and the videotaped interviews of the young victim. Evidence from the young victim has been found adequate, *Garcia v. State.* It cannot be gainsaid that defense counsel acted reasonably in assessing this situation and in rendering his advice to Barnes that a conviction on both counts was all but assured. The sixth amendment claim of ineffective assistance of counsel is without merit.

So, too, is the claim that Barnes wrongfully was denied his right to appeal. As part of the plea allocution, the trial court advised that if it imposed a sentence within the plea agreement, by pleading guilty Barnes waived his right to appeal without the court's permission, except for matters raised by written pretrial motion. Tex.Code Crim.Proc.Ann. art. 44.02 (Vernon 1979) (partially repealed Dec. 18, 1985, effective Sept. 1, 1986). There is no absolute constitutional right to an appeal, *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). When a defendant validly waives his right to appeal, the Constitution provides no succor. So it is for Barnes.

The judgment of the district court rejecting habeas relief under § 2254 is AFFIRMED.