**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Miguel Angel JUAREZ–FIERRO and Roberto Hinojosa Pacheco, Defendants–Appellants.**

**No. 90–2712**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

June 26, 1991.

---

Cindy Salsbury, Laredo, Tex. (Court-appointed), and Roberto Hinojosa Pacheco, Belton, Tex., for defendant-appellant Miguel Angel Juarez–Fierro.

Oscar J. Pena, Sr., Laredo, Tex. (Court-appointed), for defendant-appellant Roberto Hinojosa Pacheco.

Peggy Morris Ronca, Asst. U.S. Atty., Ronald G. Woods, U.S. Atty., and Paula C. Offenhauser, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before KING, GARWOOD, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Appellants Juarez and Pacheco challenge their convictions for conspiracy to possess and possession with intent to distribute marijuana, arguing that their prosecutions were barred by the double jeopardy clause and their constitutional and statutory guarantees to a speedy trial. Appellant Juarez also argues that the evidence was insufficient to support his conviction. Finding no error, we affirm.

*Facts and District Court Proceedings*

The record reveals that over the course of several months, the appellants cooperated with government informant Robert Lopez in the transportation of marijuana into the United States from Mexico. On the occasion named in the indictment, Lopez testified that he met with Juarez and Pacheco at Juarez' house to discuss the details of a pending marijuana deal. Pursuant to Juarez's instructions, Lopez met with the "crosser," the person appointed to drive the drugs across the U.S./Mexican border, and arranged a meeting place along Highway 83. Lopez then returned to Juarez's house, and obtained approval of the rendezvous spot from him and Pacheco.

According to their plan, Lopez picked up a Bronco automobile in Nuevo Laredo, Mexico, and drove it across the border to the appointed location on Highway 83. After picking up the marijuana from the "crosser," Lopez met Pacheco at a nearby convenience store. The two then proceeded, with Pacheco's black and red pickup leading the way, to a residence where a man named Tito accepted $200 to store the marijuana-laden Bronco at his house.

The next day, after verifying that the Bronco and its illegal contents were still at Tito's residence, the three men proceeded to a used car lot, where they purchased a vehicle, in Lopez's name, for the purpose of driving to Houston to collect drug money. Juarez and Pacheco's plan to drive the marijuana to Houston in a separate vehicle were thwarted, however, when the Bronco was seized by law enforcement agents later that day.

Juarez and Pacheco were indicted for conspiracy to possess with the intent to distribute marijuana, and possession with intent to distribute marijuana. On the morning of trial, after the jury was selected but before the panel was sworn, the government moved to dismiss the indictment due to fact that its principal witness

had disappeared. The next day, the government filed a superseding indictment, coupled with a written motion to dismiss the original indictment without prejudice, which the trial court granted without objection from the defendants. The appellants then filed motions to dismiss, asserting statutory and constitutional violations of the right to a speedy trial, and double jeopardy. After a hearing, the trial court denied those motions. The appellants proceeded to trial again, and were convicted on both counts. This appeal followed.

### Double Jeopardy

The appellants argue that because jeopardy had attached in the first proceeding, re-prosecution for the same offense was barred. Because we find jeopardy had not yet attached, we affirm the district court's ruling.

■ The Double Jeopardy Clause of the fifth amendment protects a defendant in a criminal proceeding against repeated prosecutions for the same offense. *United States v. Dinitz*, 424 U.S. 600, 607, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976). Because courts have recognized that the clause operates to protect the defendant's "valued right to have his trial completed by a particular tribunal," *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971), jeopardy attaches when the jury is empaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 29, 98 S.Ct. 2156, 2157, 57 L.Ed.2d 24 (1978).

In its written reasons for denying the motions to dismiss, the district court found that the petit jury had never been sworn, thus jeopardy had not attached. The court also noted that the appellants had failed to object on the basis of double jeopardy to

the government's motion to dismiss the first indictment without prejudice, either when it was orally made, or in the two intervening weeks between submission of the government's written motion and the court's ruling. The appellants argue that the pre-voir dire swearing of the entire venire caused jeopardy to attach. They also complain that they were not provided with an opportunity to object to the government's motion. We are unmoved by either argument.

■ As the government persuasively argues, a jury is not "empaneled" until all parties have exercised their strikes, and twelve jurors are selected to hear the case. A holding that the pre-voir dire oath triggers the double jeopardy clause would imply that the jury is "empaneled" even before the final jury is selected. Such a construction is illogical. *Cf. United States v. Gonzales*, 671 F.2d 441 (11th Cir.), *cert. denied*, 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982) (where the court implied, in the context of a speedy trial claim, that a jury is not "empaneled" until after voir dire and the final selection of the petit jurors).

■ The record also reveals that the appellants had ample time to object to the government's motion to dismiss the indictment without prejudice. As the district court noted, the appellants were served with copies of the government's written motion, but failed to file a double jeopardy objection in the two week period before the court signed its order granting the motion. As Juarez concedes, double jeopardy can be waived. *See United States v. Kington*, 835 F.2d 106 (5th Cir.1988). We find no error in the trial court's ruling.[1]

---

1. We summarily dismiss Pacheco's contentions that he was constitutionally entitled to be tried by the first jury, and that the method of empaneling and swearing the jury employed by the district court is improper. As to the first argument, the right of an accused to be tried by a particular jury is embodied within, but is not independent of, the double jeopardy clause. *See Crist*, 437 U.S. at 35–36, 98 S.Ct. at 2161. Accordingly, because we find that the double jeopardy clause has no application to this case, his argument has no merit. As to the other conten-

tion, we find that the issue is not properly before our court. Volume five of the record of the second trial ends just before the attorneys exercised their strikes. Volume six begins with the swearing of the first witness. Since the appellant failed to order the parts of the record regarding the swearing of the second petit jury, we cannot review his claim. *Cf. United States v. Gerald*, 624 F.2d 1291, 1296 n. 1 (5th Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981).

### The Right to a Speedy Trial

The appellants alternatively contend that re-prosecution was barred by their constitutional and statutory rights to a speedy trial.[2] We find both arguments meritless.

▉ The Supreme Court has identified four factors that must be assessed in determining whether a defendant has been deprived of his constitutional right to a speedy trial. These include (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the degree of prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). Consideration of these four factors militates against Juarez in this case. Approximately four months elapsed between the time of Juarez's arrest and the time his trial began. Our court has previously held that greater periods of time were not presumptively prejudicial. *See e.g., United States v. Maizumi*, 526 F.2d 848, 851 (5th Cir.1976) (finding that ten and one-half months was not a presumptively prejudicial delay).

▉ As to the reasons for the delay, Juarez makes no allegation of governmental misconduct or improper dilatory tactics, but merely suggests that the government negligently failed to secure the appearance of its witness. Our court has noted that a delay attributable to negligence "is to be weighed 'less heavily' against the government." *United States v. Greer*, 655 F.2d 51, 52 (5th Cir.1981).

▉ Considering the timeliness of Juarez's assertion of his claim, we note that he raises this constitutional challenge for the first time on appeal. Such a delay in asserting this claim must weigh in favor of the government.

▉ Finally, we conclude that Juarez has failed to make a showing of prejudice from the delay. Although he rails at length about the anxiety he has suffered from the delay, he makes no showing of how his defense was impaired, the most important inquiry under this factor. *See United States v. MacDonald*, 435 U.S. 850, 858, 98 S.Ct. 1547, 1551–52, 56 L.Ed.2d 18 (1978). Considering his weak showing with regard to the other factors, we find that Juarez's conclusory statements about the prejudice he has suffered are insufficient to support a constitutional challenge.

▉ Similarly, we reject Juarez and Pacheco's challenge under the Speedy Trial Act, 18 U.S.C. § 3161, an argument the district court characterized as "border[ing] on the frivolous." Under section 3161, a defendant must be tried within seventy days of the filing date of the indictment, or the date the defendant appeared in court, whichever is later. However, subsection (h)(1)(F) provides for the exclusion of delay periods resulting from the filing of any pre-trial motion. Prior to ruling on the Speedy Trial Act objection, the court gave both sides an opportunity to present their computations. Although the record contains no response from Pacheco to the government's computation, Juarez argued, without authority, that the section 3161(h)(1)(F) exclusions did not apply. The trial court concluded that because the appellants' pre-trial filings[3] fell within the exclusion, the second trial was commenced "well within the limits of the Act." We find no clear error in the district court's computation of the elapsed time period, and accordingly, we find no violation of the Speedy Trial Act.

### Sufficiency of the Evidence

Juarez argues that the evidence was insufficient to support his conviction for conspiracy to possess and possession with intent to distribute marijuana. Finding ample evidence to support the jury's verdict, we affirm.

---

**2.** Pacheco raised a statutory challenge based upon the provisions of the Speedy Trial Act, 18 U.S.C. § 3161 in the district court. Juarez adopted Pacheco's argument below, and now raises a constitutional challenge for the first time on appeal.

**3.** Juarez's pre-trial motions included a request for a transcript in a companion case, a motion to suppress evidence, a motion to extend discovery time, a motion to quash the indictment, a motion for disclosure of exculpatory evidence, and a motion to produce grand jury testimony.

In reviewing a challenge to the sufficiency of the evidence, this court must determine whether "a rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt." *United States v. Carrasco*, 830 F.2d 41, 43 (5th Cir.1987). It is not necessary that the evidence exclude every hypothesis of innocence, and "a jury is free to choose among reasonable constructions of the evidence." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982). We view all inferences and credibility choices in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

■ In a narcotics conspiracy prosecution, the government must prove beyond a reasonable doubt (1) the existence of an agreement between two or more persons to violate the narcotics laws, (2) that each alleged conspirator knew of the conspiracy and intended to join it, and (3) that each alleged conspirator did participate in the conspiracy. *United States v. Medina*, 887 F.2d 528, 530 (5th Cir.1989). Proof of any element may be by circumstantial evidence, and "circumstances altogether inconclusive, may, by their number and joint operation ... be sufficient to constitute conclusive proof." *United States v. Roberts*, 913 F.2d 211, 218 (5th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 2264, 114 L.Ed.2d 716 (1991).

■ As to the possession count, the government must prove that Juarez and Pacheco *knowingly* possessed marijuana with the intent to distribute it. *United States v. Molinar–Apodaca*, 889 F.2d 1417, 1423 (5th Cir.1989). Proof of constructive possession is sufficient, thus any showing that the defendant exercised ownership, dominion, or control of the drugs, or of the premises on which they are found, will suffice. *United States v. Diaz–Carreon*, 915 F.2d 951, 954 (5th Cir.1990); *United States v. Thompson*, 700 F.2d 944, 952 (5th Cir.1983). A jury may infer a defendant's intent to distribute the substance from possession of a large amount of contraband. *United States v. Hernandez–Palacios*, 838 F.2d 1346, 1349 (5th Cir.1988).

Juarez argues that because no witness testified that he physically handled the marijuana, he cannot be guilty of possession. He also suggests that the evidence merely places him in the company of bad men, and fails to establish his knowing participation in a drug conspiracy. We reject both suggestions.

■ The testimony of the government's informant, corroborated by police surveillance, indicates that Juarez made arrangements for the transportation of the marijuana, directed Lopez as to when and where it should be picked up, arranged to store the marijuana-laden Bronco at Tito's house, and purchased a vehicle to transport Lopez to Houston to complete the deal. The government also introduced evidence, pursuant to Federal Rule of Evidence 404(b), regarding prior narcotics deals with Lopez as a means of demonstrating his intent. There was ample proof from which the jury could infer that Juarez knew of the existence of the conspiracy, and voluntarily participated in it.

■ Similarly, the evidence supports the jury's verdict that Juarez constructively possessed the marijuana. Juarez arranged and directed Lopez's movements with regard to the marijuana deal, instructing him where and when to move the drugs. He instructed Lopez to store the Bronco at Tito's house, and was, at all times, aware of its location and accessible to it. Based upon those facts, the jury could have reasonably determined that Juarez possessed sufficient control and dominion over the drugs to support a finding of constructive possession.

### Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.