**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Daniel MARTINEZ–PEREZ and Edward James Dennis, Defendants– Appellants.**

**No. 90–8683 Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Aug. 26, 1991.

Salvador C. Ramirez, Robert R. Harris, El Paso, Tex., for Martinez–Perez.

Normando R. Pacheco, Denver, Colo., for Dennis.

LeRoy Morgan Jahn, Stanley Serwatka, Carlos G. Hermosillo, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for U.S.

Before JOLLY, DAVIS, and SMITH, Circuit Judges.

PER CURIAM:

Daniel Martinez–Perez (Martinez) and Edward Dennis appeal their convictions of conspiracy to possess, and possession of, marihuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Finding no error, we affirm.

## I.

A jury found Dennis, Martinez, and Aldo Olivas–Ruiz guilty of conspiracy and possession with intent to distribute marihuana. The jury also found Martinez guilty of conspiracy to import and importation of marihuana. The appeals of Dennis and Martinez are before us now.

## II.

Dennis and Martinez argue that their fourth amendment rights were violated when they were arrested and marihuana was discovered in and around an airplane in the West Texas Airport near El Paso, Texas. We review the district court's findings of fact under the clearly erroneous standard and review *de novo* the ultimate conclusion of whether the fourth amendment was violated. *United States v. Colin*, 928 F.2d 676, 677–78 (5th Cir.1991).

Some of the facts surrounding the incidents are not disputed. Dennis asked Francine Tucker, the airport's manager, whether he could rent a closed hanger. Such shelter was not available, so Dennis rented a shade, which consists of a roof and four open sides. He paid cash for the space rental and for the fuel, receiving a cash discount for the fuel. Tucker offered to give him receipts for the transactions, but he declined.

Dennis said that he planned to leave the airport at various hours during the day or night. Tucker went out to the shade, looked into the aircraft, and noticed that some of the seats had been removed. She

became suspicious and contacted her husband, who contacted United States Customs Agent R. James Davidson.

Davidson and his partner, Agent Kenneth Carpenter, examined the aircraft and noticed that there were no seats in the rear portion. Davidson received information from an unnamed confidential source that Dennis had recently met at the airport with two Hispanic males who were driving a large dark pickup truck. Davidson, Carpenter, and Texas Department of Public Safety Inspector Ronnie Stinnett established surveillance of the aircraft. At approximately 5:45 a.m. on December 6, 1989, Davidson saw a dark pickup truck driving toward the aircraft. Three men got out of the pickup, unloaded cargo, and began placing it on the aircraft. Davidson, Carpenter, and Stinnett approached the aircraft. Davidson was armed with a machine gun, Carpenter was carrying a shotgun, and Stinnett held a handgun. Dennis, Olivas, and Martinez were in or near the aircraft.

The parties dispute what occurred next. According to the officers' testimony, Davidson announced that he was a customs officer and that he was going to conduct a "ramp check," a procedure designed to check licensing and certification to ensure compliance with Federal Aviation Administration (FAA) regulations. *See United States v. Zukas*, 843 F.2d 179, 181 (5th Cir.1988), *cert. denied*, 490 U.S. 1019, 109 S.Ct. 1742, 104 L.Ed.2d 179 (1989). Davidson testified that he smelled marihuana when he was about two to three feet from the airplane. Stinnett testified that he smelled the marihuana as he approached the aircraft. Carpenter testified that he could not smell the marihuana at that time but that he has a chronic sinus problem that inhibits his ability to smell.

Davidson testified that as he looked inside the plane, he saw containers of marihuana wrapped in cellophane. He asked generally to whom the packages and nearby suitcases belonged, but no one replied. After obtaining Olivas's consent to search the containers, the agents did so, and found marihuana. According to the officers, at that time they arrested Dennis, Martinez,

and Olivas, handcuffed them, and placed them in police cars.

Martinez and Olivas testified that they were handcuffed immediately after the officers approached the aircraft. Olivas testified that the officers then threw him down and put a foot on his back. The district court did not credit these aspects of the defendants' testimony. Especially in light of the officers' testimony, these findings of fact are not clearly erroneous. *See Colin*, 928 F.2d at 677.

Dennis argues that he was arrested without probable cause and that the results of the ensuing search should be suppressed as fruits of the poisonous tree. The three *Berry* tiers of police-citizen contact apply to searches of aircraft involving ramp checks. *Zukas*, 843 F.2d at 181–82. *See United States v. Berry*, 670 F.2d 583, 591 (5th Cir.1982) (en banc).

> The first tier, communication between police and citizens, involves no coercion or detention and does not implicate the fourth amendment. An investigatory stop, at the second level of contact, is a brief seizure that must be supported by reasonable suspicion, that is 'specific and articulable facts, which taken together with rational inferences from these facts reasonably warrant an intrusion.' Finally, a full scale arrest must be supported by probable cause.

*Zukas*, 843 F.2d at 181–82 (citation omitted) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)). In *Zukas*, we held that

> when the police officers parked their car in front of the plane, approached the pilot and asked for identification and registration papers, then informed him, without returning those papers, that he was suspected of smuggling drugs, the police-citizen contact constituted more than mere communication.... [A]t this point a fourth amendment seizure occurred.

*Id.* at 182. We also held that this seizure constituted a *Terry* stop requiring only reasonable suspicion, not a *de facto* arrest. *Id.*

■ *A fortiori*, in the instant case, reasonable suspicion was, at most, all that was required when the officers approached the aircraft, brandished their weapons, and announced their intention to conduct a ramp check. At this point, the officers had reasonable suspicion, including specific and articulable facts that an intrusion was warranted. Dennis had requested a closed space from which he could fly at any time of the day or night. He paid in cash and declined Tucker's offer of a receipt. Seats from his aircraft had been removed. Cargo was being loaded onto the aircraft very early in the morning.

The district court correctly concluded that, when Davidson smelled marihuana, his reasonable suspicion ripened into probable cause, justifying the warrantless search of the aircraft. *United States v. Marshall*, 878 F.2d 161, 163 (5th Cir.1989); *United States v. McDaniel*, 550 F.2d 214, 218 (5th Cir.1977). Therefore, we need not address the defendants' arguments concerning whether the district court erred by determining that they lacked standing to assert their fourth amendment rights and whether the consent to search was valid.

### III.

■ Dennis contends that the evidence is insufficient to support his convictions. The standard of review is whether, considering all the evidence in the light most favorable to the prosecution, a rational factfinder could have found the defendant guilty beyond a reasonable doubt, based upon the evidence presented at trial. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). As to the substantive count, the government had to prove beyond a reasonable doubt that Dennis knowingly possessed marihuana and had an intent to distribute it. The "possession" element may be shown through constructive possession, which includes exercising dominion or control over the controlled substance. *United States v. Juarez–Fierro*, 935 F.2d 672, 677 (5th Cir. 1991). Distribution for these purposes includes " 'acts perpetrated in furtherance of

a transfer or sale....' " *United States v. Lechuga*, 888 F.2d 1472, 1478 (5th Cir.1989) (quoting *United States v. Brunty*, 701 F.2d 1375, 1381 (11th Cir.), *cert. denied*, 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983)). As to the conspiracy count, the government had to prove beyond a reasonable doubt that Dennis agreed with at least one person to commit the substantive count, that Dennis knew of the conspiracy and intended to join it, and that Dennis participated in the conspiracy. *See Juarez–Fierro*, 935 F.2d at 677.

■ Dennis argues that the evidence shows nothing more than his mere presence at the scene. The evidence, viewed in the light most favorable to the prosecution, shows far more. Dennis's arrangements for the storage of the aircraft, his exercise of control over it, his prior contact with what may have been the truck carrying the marihuana, the loading of marihuana into the aircraft, and his apparent concerted action with other people in loading it allowed a rational trier of fact to find beyond a reasonable doubt that Dennis conspired to and did possess the marihuana with the intent to distribute it.

### IV.

■ Dennis argues that the district court erred by denying his motion to sever his trial from Olivas's and Martinez's. In general, defendants who are indicted together should be tried together. *United States v. Arzola–Amaya*, 867 F.2d 1504, 1516 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989). This rule is especially strong when the defendants are charged with committing the same conspiracy. *United States v. McGuire*, 608 F.2d 1028, 1031 (5th Cir. 1979), *cert. denied*, 446 U.S. 910, 100 S.Ct. 1838, 64 L.Ed.2d 262 (1980). Dennis, Olivas, and Martinez were indicted together for the same conspiracy.

■ Abuse of discretion is the standard of review for a district court's denial of a motion for severance. *United States v. DeVarona*, 872 F.2d 114, 120 (5th Cir. 1989). To demonstrate such an abuse,

Dennis would have to show that: "(1) the joint trial prejudiced him to such an extent that the district court could not provide adequate protection; and (2) the prejudice outweighed the government's interest in economy of judicial administration." *Id.* at 120–21.

Dennis relies upon *United States v. James,* 590 F.2d 575 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). But *James* addresses not when defendants must be severed from joint trials, but when out-of-court statements of co-conspirators may be admitted into evidence. *James,* 590 F.2d at 577. Under *James,*

> a declaration by one defendant is admissible against other defendants only when there is a 'sufficient showing, by the independent evidence, of a conspiracy among one or more other defendants and the declarant and if the declarations at issue were in furtherance of that conspiracy,' and ... 'as a preliminary matter, there must be *substantial, independent* evidence of a conspiracy at least enough to take the question to the jury.'

*Id.* at 581 (internal citation omitted) (quoting *United States v. Nixon,* 418 U.S. 683, 701 & n. 14, 94 S.Ct. 3090, 3104 & n. 14, 41 L.Ed.2d 1039 (1974)).[1]

 An appellant making a *James* argument must specifically identify the particular statement he is challenging. *United States v. Valdez,* 861 F.2d 427, 432 (5th Cir.1988), *cert. denied,* 489 U.S. 1083, 109 S.Ct. 1539, 103 L.Ed.2d 844 (1989). The only statement of a co-conspirator that Dennis identifies in connection with his *James* argument is Martinez's statement that "we had much stuff."[2] Dennis argues that the "we" referred included him, and he implicitly argues that the "stuff" was the marihuana. Given the ambiguity of the statement, and especially in light of the other evidence against Dennis, he has

not shown that any *James* problem created so much prejudice that it outweighed the government's interest in judicial economy. Therefore, Dennis has not shown that the district court abused its discretion in denying his motion for severance. *See DeVarona,* 872 F.2d at 120.

## V.

At trial, police officers testified that Mr. and Mrs. Tucker had been paid $5,000 for the information they had furnished regarding Dennis's conduct at the airport. The money was given as a reward; before they provided the information, they were not told that they could be paid anything for it. The Assistant United States Attorney stated that he had not known about the payment. The officer who made the payment testified that he did not tell the prosecutors about the payment. Dennis's attorney argued that the government's failure to disclose that payment before trial violated the district court's standing order regarding disclosure of information to the defense. The district court explored the issue at length and admonished the government for not disclosing the information in a timely manner. Dennis moved to strike all statements made by Tucker and any agent who was aware of the payment; the district court denied the motion.

 On appeal, Dennis argues that the failure to disclose the payment in a timely manner violated his constitutional rights to due process, effective assistance of counsel, and cross-examination, and his rights under Fed.R.Crim.P. 16, which governs discovery. Dennis relies, in part, upon *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). "The rule of *Brady* ... requires the state to disclose to the defendant all favorable evidence material either to guilt or punishment. Suppression of favorable, material evidence denies a defendant's constitutional right to due pro-

---

1. *United States v. Chestang,* 849 F.2d 528, 531 (11th Cir.1988), states that *"James* has been overruled to the extent that it did not allow district courts, in making preliminary factual determinations ..., to examine the co-conspirator statements sought to be admitted." *See*

*Bourjaily v. United States,* 483 U.S. 171, 178–79, 107 S.Ct. 2775, 2780–81, 97 L.Ed.2d 144 (1987).

2. Customs Service Special Agent Quirino Santillano testified that, after Martinez was arrested, he said "Traiamo[s] mucha[s] cosa[s]," which Santillano translated as "We had a lot of stuff."

cess." *Barnes v. Lynaugh*, 817 F.2d 336, 338–39 (5th Cir.1987). Evidence is material for these purposes if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

Dennis has not shown a *Brady* violation. The payment was disclosed to the defendant and to the jury during trial; especially in light of the relatively unimportant nature of the information vis-a-vis the elements of the offenses, there is no reasonable probability that the jury's verdict would have been different if the information had been disclosed earlier.

Dennis also argues that timely disclosure may have had an impact on the suppression hearing but has not shown a reasonable probability that the result of the hearing would have been different if the payment had been disclosed. As to evaluating Tucker's credibility, the payment was relatively unimportant, as she did not learn about the possibility of receiving it until after she had relayed the information. As to evaluating the officers' credibility, nothing supports Dennis's assertion that they engaged in "secrecy and evasion"; nothing indicates that they knew of the district court's standing order, and testimony indicates otherwise. Moreover, Tucker's testimony provided only a small portion of the basis for district court's ruling on the motion to suppress; the key facts came from the officers' observations after surveillance had begun.

Dennis also relies in part upon *Giglio v. United States*, 405 U.S. 150, 154–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). *Giglio* addresses nondisclosure of an agreement or understanding regarding a key witness. *Id.* at 154–55, 92 S.Ct. at 766. But Dennis has not shown that a *Giglio* violation has occurred here, as the agreement or understanding was disclosed to the defense before the end of the trial. *See id.* Dennis cites no authority indicating that a *Giglio* violation can occur when the evidence has been disclosed at trial. In *Hill v. Black*, 887 F.2d 513, 517 (5th Cir.1989),

*vacated on other grounds*, — U.S. —, 111 S.Ct. 28, 112 L.Ed.2d 6 (1990), we indicated that a *Giglio* violation does not occur when the matter was disclosed to the defense before the end of the trial. We now reaffirm the *Giglio* aspect of *Hill.*

Dennis argues that his rights under *Napue v. Illinois*, 360 U.S. 264, 269–71, 79 S.Ct. 1173, 1177–78, 3 L.Ed.2d 1217 (1959), were violated. *Napue* addresses a prosecutor's knowing failure to correct a witness's false testimony. *Id.* at 269–71, 79 S.Ct. at 1177–78. Dennis has not shown a *Napue* violation, as he has not established that false testimony was given.

As to Dennis's claim that the lack of a timely disclosure violated his right to effective assistance of counsel,

> The general rule in this circuit is that a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations. [This court has] undertaken to resolve claims of inadequate representation on direct appeal only in rare cases where the record allows [us] to evaluate fairly the merits of the claim.

*United States v. Higdon*, 832 F.2d 312, 313–14 (5th Cir.1987), *cert. denied*, 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988) (citations omitted). Because of the unusual nature of this ineffective assistance claim, however, it can be resolved on direct appeal: Dennis is not claiming that his attorney rendered deficient performance; instead, he is arguing that the government's conduct restricted his attorney's ability to render effective assistance. Therefore, the usual need for developing the record regarding the attorney's version of the events does not exist here.

Even if this claim properly arises under ineffective assistance principles, Dennis is not entitled to relief. To succeed, Dennis would have to show (at least) a reasonable probability that, but for the untimely disclosure, the result of his proceedings would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). As dis-

cussed above, Dennis has not made such a showing. Similarly, to the extent that the lack of a timely disclosure implicates Dennis's right to cross-examination, he has not shown that he was prejudiced, so he has not shown that the district court's judgment should be disturbed.

Dennis also has failed to show that he is entitled to relief because of any violation of rule 16. District courts have broad discretion in determining the appropriate sanction for a violation of a discovery order. *United States v. Bentley*, 875 F.2d 1114, 1118 (5th Cir.1989). "In exercising this discretion, the district court should consider factors such as the reasons why disclosure was not made, the prejudice to the opposing party, the feasibility of rectifying that prejudice by granting a continuance, and other relevant circumstances." *Id.* Especially in light of the prosecutor's ignorance of the payment, the relatively low level of prejudice caused by the nondisclosure, and the presentation of the information to the jury, Dennis has not shown that the district court abused its discretion by denying the motion to strike the testimony.

### VI.

Dennis contends that the district court allowed the jury to deliberate beyond an eight-hour time period for two successive days, so the verdicts were the product of fatigue, which amounts to coerced verdicts. "The length of time of jury deliberation is a matter of discretion of the trial judge; without more, it cannot constitute coercion." *United States v. Caracci*, 446 F.2d 173, 178 (5th Cir.), *cert. denied*, 404 U.S. 881, 92 S.Ct. 202, 30 L.Ed.2d 162 (1971). The record is not clear on the exact time that the jury returned its verdict; Dennis alleges that it was 9:00 p.m. But the district court had informed the jury that, if it needed a break, it should so indicate, and a break would be taken. Nothing in the record indicates that the jury did so. Dennis has not shown that the district court abused its discretion regarding the timing of the jury's deliberations or that the verdicts were coerced.

We find no error in the proceedings in the district court. Its judgment, accordingly, is AFFIRMED.