1 F.3d 1242
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES Of America, Plaintiff-Appellee,
v.
Pamela BROWN, Defendant-Appellant.
 No. 92-5873.
 United States Court of Appeals, Sixth Circuit.
 July 30, 1993.
 
 Before RYAN, Circuit Judge, KRUPANSKY, Senior Circuit Judge, and JOINER, Senior District Judge.*
 RYAN, Circuit Judge.
 Pamela Brown appeals her jury conviction and sentence for possession with the intent to distribute cocaine, a violation of 21 U.S.C. Sec. 841(a)(1). This appeal raises two issues: 1) whether sufficient evidence supports the jury's guilty verdict; and 2) whether the district court erred when it raised Brown's offense level for obstruction of justice under U.S.S.G. Sec. 3C1.1.
 
 
 1
 We conclude that the evidence sufficiently supports the jury verdict and that the district court committed no error in sentencing; therefore, we shall affirm.
 
 I.
 
 2
 On October 9, 1991, a grand jury indicted Brown on one count of unlawfully possessing cocaine with the intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). The indictment alleged that on September 29, 1991, Brown possessed cocaine at the Cincinnati/Northern Kentucky International Airport. The following evidence was adduced at trial.
 
 
 3
 On the morning of September 24, 1991, Detective David W. Bunning of the Cincinnati/Northern Kentucky International Airport Police Department was on routine surveillance of arriving flights in one of the terminals. As he watched passengers disembark from a flight that had originated in Los Angeles, he recognized the defendant as someone he had seen at the airport one week earlier. Bunning decided to follow her. He was joined by Drug Enforcement Administration Task Force Officer James Swauger. Bunning and Swauger followed Brown to another gate where she was connecting to a flight to Cleveland. They learned from the ticket agent that Brown was flying under the name of "Vanessa Redgrave" on a one-way ticket from Los Angeles to Cleveland via Cincinnati. The ticket agent informed the officers that the $491 ticket had been purchased with cash one half-hour before the flight was scheduled to depart from Los Angeles.
 
 
 4
 The officers continued to watch Brown, who eventually sat down in the gate area. Detective Bunning confronted Brown, identified himself as a police officer, and asked Brown if he could speak with her. In response to Bunning's questions, Brown told him that she was flying from Los Angeles to Cleveland to visit a friend and did not know how long she would stay. She told Bunning that her name was "Vanessa Redgrave" and showed him her airline ticket. When asked for identification, she denied having any. Noting that there were staple holes in the upper right corner of the defendant's airline ticket, Bunning asked Brown whether she had checked any baggage. Brown replied that she had not. She consented to Bunning's request to search the bag she was carrying. Agent Swauger joined them in the nearby employee break room and asked Brown for permission to search her purse. While the agents searched her bag and purse, Brown spilled a soft drink she had been carrying. She used paper towels to clean the spilled drink and deposited the towels into an empty trash can located in the break room.
 
 
 5
 Bunning searched Brown's carry-on bag and discovered a number of distinctive calling cards, a sky pager, and other personal items. In her purse and wallet, Swauger discovered cash, as well as a South Carolina driver's license and other identifying cards, all in the name of Pamela Brown. Brown initially told the agents that the license belonged to a friend, but eventually admitted that her name was Pamela Brown and that the license was hers.
 
 
 6
 Brown was taken into custody, given her Miranda rights, and transported to the airport police department for further investigation. While Brown was being taken to the police department, Bunning learned from airline officials that six people, including Brown, transferred from the Los Angeles flight to the Cleveland flight. He learned that five of the six people flying from Los Angeles to Cleveland via Cincinnati had checked baggage bearing identification labels that matched their ticket information, but that one bag had been located that bore a claim stub but no personal identification tag. Bunning seized that bag, which was very heavy and reeked of mothballs. Brown denied that the bag was hers. After a police dog, trained to detect the odor of certain narcotics, reacted to the narcotic odor coming from the seized bag, a search warrant was obtained to open the suitcase and examine its contents. Officers searched the checked bag and discovered a calling card that was identical to the calling cards found in Brown's carry-on bag. The checked suitcase also contained mothballs, dryer sheets, and packages containing what later proved to be 3001.9 grams of cocaine hydrochloride.
 
 
 7
 Meanwhile, Officer Kenneth Roeller of the airport police department searched the break room and found a wet baggage claim ticket stub stuck to the bottom of the trash can underneath the wet towels Brown had used to clean up her spilled drink. The claim stub located in the break room matched the claim ticket attached to the suitcase.
 
 
 8
 At the close of the government's case, Brown moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29. The motion was denied. Brown then testified that her employer gave her the pager so that he could communicate with her while she traveled for work. She stated that she was taking a birthday trip to Cleveland to visit friends, and that her girlfriend Vanessa purchased the ticket for her the day of the flight while Brown was at work. Brown did not know that Vanessa had purchased the ticket in the name of "Vanessa Redgrave" until she received the ticket.
 
 
 9
 Brown continued to deny that the checked bag was hers. According to her testimony, when she arrived at the Los Angeles airport, she initially planned to check her carry-on bag but changed her mind at the last minute. When she decided to take the bag on board the airplane, the skycap took her ticket folder, pulled off the claim check stub, and returned the ticket to her. She testified that the checked suitcase was not hers and that she was not expecting to pick up any bags when she arrived in Cleveland. Brown admitted to cleaning up the spilled beverage in the break room but could not explain how the baggage claim check stub had ended up in the trash along with the wet paper towels.
 
 
 10
 The jury deliberated for one and one-half hours before returning a guilty verdict. The presentence report calculated a base offense level of 28 and recommended a two-point adjustment for obstruction of justice, bringing the total offense level to 30. Brown objected to the two-level enhancement for obstruction of justice. The district court found that Brown had committed perjury at trial and overruled her objection. Determining that Brown had a total offense level of 30, a criminal history category of I, and a guideline range of 97 to 121 months imprisonment,[1] the court sentenced her to a 97-month imprisonment term, to be followed by a 5-year term of supervised release. The court also ordered her to pay a mandatory special assessment of $50. Brown filed a timely notice of appeal.
 
 II.
 A.
 
 11
 Brown argues that the district court should have granted her motion for judgment of acquittal because she did not have the claim stub in her possession, and therefore no rational jury could find beyond a reasonable doubt that she knowingly and intentionally possessed the contents of the luggage. She claims that there is no evidence that she knew about the cocaine or that she had any intent to possess the substance.
 
 
 12
 "The proper standard for evaluating a motion for judgment of acquittal is whether, considering the facts in the light most favorable to the government, there is evidence from which a jury might find the defendant guilty beyond a reasonable doubt. If such evidence exists, the motion must be denied." United States v. Gorman, 807 F.2d 1299, 1303 (6th Cir.1986), cert. denied, 484 U.S. 815 (1987). A motion for judgment of acquittal should be granted "if the evidence is insufficient to sustain a conviction" on the charged offense. Fed.R.Crim.P. 29(a). "In a criminal case the standard of review for claims of insufficient evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 13
 Federal law provides that "it shall be unlawful for any person knowingly or intentionally ... to ... possess with the intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. Sec. 841(a)(1). The government thus bears the burden of proving beyond a reasonable doubt that, on September 24, 1991, Brown knowingly or intentionally possessed the three kilograms of cocaine which were recovered from the unlabeled suitcase, and that she possessed the cocaine with the intent to distribute it. See United States v. Christian, 786 F.2d 203, 210 (6th Cir.1986). Possession "may be shown through constructive possession, which includes exercising dominion or control over the controlled substance." United States v. Martinez-Perez, 941 F.2d 295, 299 (5th Cir.1991), cert. denied, 112 S.Ct. 1295 (1992).
 
 
 14
 A rational jury could conclude beyond a reasonable doubt that Brown, in spite of her claims to the contrary, checked the suitcase containing the cocaine, had constructive possession of the bag when she was apprehended, and unsuccessfully attempted to discard the claim stub in the break room. Brown seems to argue that because she discarded the baggage claim ticket stub, the government cannot establish that she intended to actually or constructively possess the suitcase or its illegal contents. In her brief, she states, "Whoever discarded the claim stub, be it airlines personnel, janitors, or otherwise, lacked an intent to exercise dominion and control by discarding the claim stub." This argument is without merit.
 
 
 15
 The district court correctly determined that the circumstantial evidence of possession was overwhelming. After spilling her drink, Brown placed her trash in the trash can in the break room, and the missing baggage claim ticket was found with the rest of her trash. Her ticket folder bore staple holes, indicating that a claim stub was once attached. Furthermore, the checked bag contained duplicates of the distinctive calling cards that were in Brown's purse. The evidence sufficiently supports the jury's verdict that Brown knowingly and intentionally possessed three kilograms of cocaine with intent to distribute. The district court properly denied the motion for judgment of acquittal.
 
 B.
 
 16
 Brown argues that the two-point enhancement for obstruction of justice under U.S.S.G. Sec. 3C1.1 was not warranted because the government failed to prove that she committed perjury. She also claims that applying the enhancement impeded her constitutional right to testify on her own behalf.
 
 
 17
 This court reviews determinations that a defendant has obstructed justice by committing perjury under a clear error standard. See 18 U.S.C. Sec. 3742(e); United States v. Burnett, 981 F.2d 874, 877 (6th Cir.1992). "If a court makes a finding that a defendant 'testified untruthfully as to a material fact while under oath, the district court [has] no discretion under the sentencing guidelines in applying Sec. 3C1.1.' " United States v. Morgan, 986 F.2d 151, 153 (6th Cir.1993) (citation omitted).
 
 
 18
 Section 3C1.1 of the sentencing guidelines provides:
 
 
 19
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 20
 U.S.S.G. Sec. 3C1.1. The commentary to section 3C1.1 lists perjury as an example of conduct to which the enhancement applies. U.S.S.G. Sec. 3C1.1, comment. (n. 3(b)). According to the commentary:
 
 
 21
 This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury) ... is not a basis for application of this provision. In applying this provision with respect to alleged false testimony or statements by the defendant, such testimony or statement should be evaluated in the light most favorable to the defendant.
 
 
 22
 U.S.S.G. Sec. 3C1.1, comment. n. 1. The Supreme Court has confirmed that committing perjury is the type of conduct to which the enhancement applies and that there is no constitutional right to commit perjury. United States v. Dunnigan, 113 S.Ct. 1111, 1117 (1993).
 
 
 23
 Two years after Brown's sentence was imposed, the Supreme Court stated:
 
 
 24
 [I]f a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out.[2] When doing so, it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination that enhancement is required is sufficient, however, if ... the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury.
 
 
 25
 Id. (footnote added). In the case before us, the district court specifically identified its reasons for finding an obstruction of justice when it stated on the record:
 
 
 26
 The Court further finds that the defendant submitted perjured testimony during the trial process by repeated incidents of contradictory testimony and complete denial. The evidence in this case clearly indicates that the baggage containing three kilograms of cocaine did belong to the defendant and she did, in fact, attempt to destroy the matching baggage claim check. Accordingly, the Court finds that the upward judgment [sic] for two levels for obstruction of justice is warranted....
 
 
 27
 Review of the record supports the district court's finding that Brown intentionally testified falsely as to material facts when she denied that the checked bag and the claim stub belonged to her. We are satisfied that the district court's finding "encompasses all of the factual predicates for a finding of perjury" and that the requirements of Dunnigan have been met. See Dunnigan, 113 S.Ct. at 1117. The district court properly applied the enhancement for obstruction of justice to Brown's offense level.
 
 III.
 
 28
 We therefore AFFIRM the district court's judgment of conviction and sentence.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 According to the district court, without the two-point enhancement, the guideline range would have been 78-97 months
 
 
 [2]
 To determine what constitutes perjury, the Dunnigan Court:
 rel[ied] upon the definition that has gained general acceptance and common understanding under the federal criminal perjury statute, 18 U.S.C. Sec. 1621. A witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory.
 Id. at 116.