**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-30914
_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

VERSUS

CEDRIC DWAYNE ROBERSON,

                                        Defendant-Appellant.


* * * * * * * * * * * * * * * * * * * * * *


_____

No. 95-30915
_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

VERSUS

TROY ANTHONY COUSIN
and
DARRYL JACOBS,

                                        Defendants-Appellants.


_____

Appeals from the United States District Court
for the Western District of Louisiana
(94-CR-20044)
_____

October 29, 1996

Before SMITH and PARKER, Circuit Judges, and JUSTICE[1], District Judge.

JERRY E. SMITH, Circuit Judge:[**]

Cedric Roberson, Troy Cousin, and Darryl Jacobs appeal their convictions and sentences for possession with intent to distribute cocaine and conspiracy to accomplish the same. Finding no error, we affirm.

## I.

This case arises out of the guilty pleas and convictions of Cedric Dwayne Roberson, Troy Anthony Cousin, and Darryl Jacobs. Three of the ten counts in the indictment are involved. Count one charged Roberson, Cousin, Jacobs, and five others with conspiracy to possess with intent to distribute 23 kilograms of cocaine and 252 grams of cocaine base, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. Count seven charged Cousin and Jacobs with possession with intent to distribute 750 grams of cocaine on February 4, 1992, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Count nine charged Roberson with possession with intent to distribute 1000 grams of cocaine on September 15, 1992,

---

[1] District Judge of the Eastern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

also a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Roberson pleaded guilty to count nine; a jury found Cousin and Jacobs guilty of counts one and seven.

The conspiracy involved a drug distribution network in Texas and Louisiana. Roberson, Cousin, Jacobs, and others transported cocaine from Texas to Louisiana and sold it through a group of drug dealers in the Kenner area (the "Kenner group"). Couriers typically would drive the cocaine from Houston to New Orleans, where the Kenner group then would distribute the drugs at the retail level. Bryan Kyles was the Houston contact for the Texas portion of the distribution network (the "Texas group"); Cousin, Roberson, and Jacobs were involved on the Louisiana side. The parties communicated via cellular phones and pagers.

## II.

Cousin and Jacobs's first argument is that there was insufficient evidence to support their convictions. The district court denied their respective motions for judgment of acquittal or new trial on this ground, and we review those decisions *de novo*. *United States v. Sanchez*, 961 F.2d 1169, 1179 (5th Cir.), *cert. denied*, 506 U.S. 918 (1992). In a criminal case, we will affirm the jury's verdict if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the jury's verdict and drawing all reasonable

3

inferences from the evidence to support the verdict.  The evidence presented at trial need not exclude every reasonable possibility of innocence.  *United States v. Faulkner*, 17 F.3d 745, 768 (5th Cir.), *cert. denied*, 115 S. Ct. 193 (1994).

In a prosecution for a drug conspiracy, the government must prove (1) the existence of an agreement between two or more persons to violate the narcotics laws; (2) that the defendant knew of the agreement; and (3) that he voluntarily participated in the agreement.  *United States v. Gonzalez*, 76 F.3d 1339, 1346 (5th Cir. 1996).  In a prosecution for possession with intent to distribute, the government must prove that the defendant knowingly possessed a controlled substance with intent to distribute it.  *United States v. Limones*, 8 F.3d 1004, 1009 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 1543, *and cert. denied*, 114 S. Ct. 1562 (1994).


A.

We first address Cousin's claim that there was insufficient evidence to support his possession and conspiracy convictions. With regard to the possession conviction, he argues that there is no evidence to support a finding that he possessed cocaine on the specific date charged, February 1, 1992.  His contention is quite simply that the lack of testimony regarding the specific date is fatal to the government's case.  With respect to his conspiracy conviction, he argues that there is no evidence to support a

4

finding that he was a "knowing" participant in the conspiracy.

The evidence is sufficient to support Cousin's conviction for possession. When the government charges a defendant with a crime using the "on" or "about" language, it is not required to prove the precise date of the offense if it establishes the general time frame in which the crime occurred. *United States v. Hernandez*, 962 F.2d 1152, 1157 (5th Cir. 1992); *United States v. Tunnell*, 667 F.2d 1182, 1186 (5th Cir. 1982). The testimony of Steven Webb, one of Kyles's drug couriers, established that the possession occurred on or about February 5, 1992.[1]

There is also sufficient evidence to support Cousin's conspiracy conviction. Walter Sharpe testified that he received cocaine from Cousin on four separate occasions. A number of other witnesses linked Cousin with known drug dealers in the Kenner area. Webb, for example, testified that Cousin and Albert Berniard traveled together to Houston to pick up drugs and that Cousin paid him $19,000 for a kilogram of cocaine. Finally, Berniard, a Kenner area drug dealer, had a pager that was billed to Cousin's address. There was more than enough evidence for the jury reasonably to conclude that Cousin was a knowing participant in the conspiracy.

---

[1] Webb testified that at one point he had met Cousin at 1916 Franklin Avenue in New Orleans to sell him a kilogram of cocaine. Both Cousin and a man Webb knew as "Duke" were present when he delivered the drugs. On February 5, 1992, a Louisiana state trooper stopped Webb as he was driving from New Orleans to Houston and found $19,724 in his car. Although Webb could not pinpoint the exact date on which he had delivered the cocaine, he did testify that the traffic stop occurred the day after the drug transaction and that the money in his car had come from Cousin.

5

Jacobs's sufficiency claim is essentially that the government failed to prove that he either knew of the conspiracy or voluntarily participated in it. At worst, he argues, the evidence showed that he was at the wrong places at the wrong times. Jacobs's argument on his possession conviction is contingent on his argument about on conspiracy convictionSShe contends that because he was not a coconspirator, the evidence must show that he *personally* possessed cocaine with the intent to distribute it.

The evidence was sufficient to support Jacobs's conspiracy conviction. A conspiracy may be proven by circumstantial evidence. *United States v. Leal*, 74 F.3d 600, 606 (5th Cir. 1996) (quoting *United States v. Cardenas*, 9 F.3d 1139, 1157 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 2150 (1994)). Paul Fisher testified that at Kyles's behest, he delivered drugs to a man named "Duke"SSwhom the government claimed was JacobsSSat Jacobs's address.[2] Webb testified that "Duke" was present at the drug transaction in early February of 1992. That testimony supports Jacobs's conviction, particularly when it is combined with the evidence of Jacobs's friendship with Kyles, the evidence that a number of drug transactions occurred at Jacobs's home, and the evidence that there were numerous phone calls between members of the conspiracy and telephone numbers that

---

[2] Fisher was unable to identify Jacobs in open court. Viewing the evidence in the light most favorable to the verdict, however, that could easily be attributed to the fact that Fisher saw "Duke" only once and for a short period of time.

the government linked to Jacobs.[3]

                                III.

Cousin claims that the district court erred in denying his motion for a judgment of acquittal because there was a variance between the indictment and the proof. Specifically, he asserts that the Kenner group was distinct from the Texas group. Cousin argues that the participants in these groups did not overlap and that the timing of the conspiracies was not a perfect fit. From this he concludes that the government charged one conspiracy but actually proved another.

As with Cousin's sufficiency claim, we review the denial of the motion for acquittal *de novo*. *Sanchez*, 961 F.2d at 1179. We may reverse a conviction when the defendant both proves a variance between the government's evidence and the allegations in the indictment and demonstrates that the variance prejudiced his substantial rights.[4] But "[w]e must affirm the jury's finding that the government proved a single conspiracy unless the evidence and

---

[3] Indeed, it appears that the conspirators had a great deal to talk about on the phone. Between January 15 and January 17, 1992, there were 25 calls between Kyles's cellular telephone or his pager and a telephone number installed at 1916 Franklin Avenue. The subscriber to that telephone number was Contrella Perkins, Jacobs's common-law wife. Between February 3 and September 1, 1992, Kyles called Berniard's beeper 57 times. Between November 27, 1991, and April 28, 1992, there were 199 calls between the telephone at 1916 Franklin and Kyles's pager or cell phone. Between February 3 and February 7, 1992, there were 24 calls between the telephone at 1916 Franklin and Kyles's pager or cell phone. Between November 29, 1991, and April 20, 1992, Kyles made nine trips to New Orleans and called the telephone number at 1916 Franklin 25 times.

[4] *United States v. Gaytan*, 74 F.3d 545, 552 (5th Cir.), *cert. denied*, 1996 WL 378632 (Oct. 7, 1996); *United States v. Morris*, 46 F.3d 410, 414 (5th Cir.), *cert. denied*, 115 S. Ct. 2595, *and cert. denied*, 115 S. Ct. 2595 (1995); *United States v. Puig-Infante*, 19 F.3d 929, 935-36 (5th Cir.), *cert. denied*, 115 S. Ct. 180 (1994).

all reasonable inferences, examined in the light most favorable to the government, would preclude reasonable jurors from finding a single conspiracy beyond a reasonable doubt." *United States v. DeVarona*, 872 F.2d 114, 118 (5th Cir. 1989). Among the factors to be considered in determining whether a single conspiracy was proven by the government are (1) the existence of a common goal; (2) the nature of the scheme; and (3) whether the participants overlapped. *Morris*, 46 F.3d at 415; *Puig-Infante*, 19 F.3d at 936.

The evidence is sufficient to support a finding of a single conspiracy. The jury reasonably could have concluded that the Texas group, which supplied drugs to Louisiana, and the Kenner group, which sold the drugs to users in Louisiana, were two facets of a single organization. The success of the Texas group was tied to that of the Kenner group, as the retail sale of drugs was necessary to Kyles's success as a large-scale wholesale distributor. *See Morris*, 46 F.3d at 416. There was also evidence that the two groups had overlapping memberships: Webb testified that two members of the Kenner group, Cousin and Berniard, went to Houston to pick up drugs. This is sufficient to prove a single conspiracy; complete overlap is not required. *Id.*

## IV.

Cousin argues that he was denied a right to a fair trial by prosecutorial misconduct during closing arguments. Prior to closing arguments, the district court excluded the hearsay

8

testimony of Montero Kelly on grounds that the government had failed to provide sufficient evidence that Kelly was a co-conspirator. Cousin alleges that the following statements during the government's rebuttal referred to that excluded evidence:

> But, you know, with this testimony Bryan Kyles is in the conspiracy. He also points out Walter Sharpe is not named in the conspiracy, but you can tell by the events that occurred during the course of the trial that Walter Sharpe is a conspirator. I submit to you, ladies and gentlemen, that the nucleus of the conspiracy in which this defendant, this Mr. Cousin was involved, it is these people in these photographs, some of them were dealing in the Kenner area, *some of them were small street dealers, such as Walter Sharpe, and Montero Kelly*, and that group. Some of them were people like Mr. Cousin and the Polks. Some of them was Mr. Albert Bernard, or Berniard, or whatever he may be, that went in with Cousin to go and get dope. [Emphasis added.]

The district court denied Cousin's motion for a mistrial on the basis of these statements.

In general, "[c]ounsel is accorded wide latitude during closing argument, and this court gives deference to a district court's determination regarding whether those arguments are prejudicial and/or inflammatory." *United States v. Murphy*, 996 F.2d 94, 97 (5th Cir.), *cert. denied*, 510 U.S. 971 (1993). "Our task in reviewing a claim of prosecutorial misconduct is to decide whether the misconduct casts serious doubt upon the correctness of the jury's verdict." *United States v. Kelley*, 981 F.2d 1464, 1473 (5th Cir.) (internal quotation marks and citation omitted) (quoting *United States v. Carter*, 953 F.2d 1449, 1457 (5th Cir. 1992)),

9

*cert. denied*, 504 U.S. 990 (1992).

Because Cousin objected to these remarks, we inquire whether they were both inappropriate and harmful, which is equivalent to review for harmless error. *United States v. Simpson*, 901 F.2d 1223, 1227 (5th Cir. 1990), *cert. denied*, 510 U.S. 983 (1993) (citing *United States v. Iredia*, 866 F.2d 114 (5th Cir.), *cert. denied*, 492 U.S. 921 (1989)). Specifically, we consider "(1) the magnitude of the prejudicial effect of the statements; (2) the efficacy of any cautionary instructions; and (3) the strength of the evidence of the appellant['s] guilt." *Kelley,* 981 F.2d at 1473 (internal quotation marks and citation omitted). At all times, "[t]he comments complained of must be viewed within the context of the trial in which they are made." *United States v. Willis*, 6 F.3d 257, 264 (5th Cir. 1993) (quoting *United States v. Dula*, 989 F.2d 772, 776 (5th Cir.), *cert. denied*, 510 U.S. 859 (1993)).

The court did not err in denying a mistrial, because the government's closing argument did not refer to the excluded testimony. As the court pointed out, its prior evidentiary ruling was simply that Kelley's hearsay statements were inadmissible because the government had failed to prove that Kelly was a coconspirator. The ruling went no further. The basis for the government's argument was not the excluded statements, but rather a set of photographs that showed the alleged coconspirators

10

together.


                                  V.

    The defendants' remaining claims relate to alleged errors in

their sentences.  We review factual findings for clear error and

interpretations of the sentencing guidelines *de novo*.  *See, e.g.,*

*Gaytan*, 74 F.3d at 558; *United States v. McCaskey*, 9 F.3d 368, 372

(5th Cir. 1993), *cert. denied*, 114 S. Ct. 1565 (1994).

                                  A.

    Roberson claims that the district court's determination of

relevant conduct violated both the terms of his plea agreement and

U.S.S.G. § 1B1.8, which provides that self-incriminating informa-

tion given by a defendant in a plea agreement cannot be used to

determine the applicable guidelines range.   His argument is

essentially that the findings on the total quantity of cocaine

involved in his crime were based on information he had disclosed to

the prosecution before Cousin and Jacobs's trial.  Roberson further

contends that this information was not reliable.

    The court did not err in using this information to determine

Roberson's guidelines range.  Whether it was disclosed to the

government before trial is immaterial, for the information Roberson

refers to was brought out both in testimony and in the government's

interviews with other defendants.  The memorandum ruling on this

issue recognized this and specifically cited the testimony as the


                                  11

basis for its findings.  No serious question is raised as to reliability.

B.

Roberson next contends that the district court incorrectly calculated the amount of drugs it used to determine his sentence. Relying on *United States v. Phillippi*, 911 F.2d 149 (8th Cir. 1990), *cert. denied*, 498 U.S. 1036 (1991), he argues that the relevant conduct testimony failed to provide specific dates and amounts of delivery.

*Phillippi* is not controlling in this circuit, and the instant case does not require us to decide whether it should be.[5]  The memorandum ruling cited the testimony of Roberson's codefendants in determining that he was responsible for 12.4 kilograms of cocaine. In so doing, it specifically rejected his argument that the testimony had failed to show specific dates and amounts of delivery.

We find no error in this decision.  Even assuming, *arguendo*, that the relevant conduct testimony did not fix specific dates to the transactions, it certainly did establish that they occurred within the time frame set out in the indictment for the conspiracy. Under U.S.S.G. § 1B1.3(a)(1)(B), Roberson could be found responsible for all foreseeable acts in furtherance of the conspiracy, and

---

[5] *See United States v. Buckhalter*, 986 F.2d 875, 879 (5th Cir.) (holding that "[t]he Fifth Circuit has never adopted the *Phillippi* standard"), *cert. denied*, 510 U.S. 873, *and cert. denied*, 510 U.S. 875 (1993).

12

under *Buckhalter*, 986 F.2d at 880, proof that the transactions occurred during the conspiracy is enough.

### C.

Jacobs reiterates Roberson's second argument in slightly different form: He claims that Roberson's drug quantities should not be attributed to him, because he did not maintain contact with Roberson after introducing him to Kyles. This argument is easily disposed of, for it is functionally equivalent to Jacobs's earlier contention that there is insufficient evidence to show that he was a member of the conspiracy. As we noted above, there is sufficient evidence for the jury to find that Jacobs was a member of the conspiracy. It follows that because a coconspirator is responsible for any foreseeable acts in furtherance of the conspiracy, *see* U.S.S.G. § 1B1.3(a)(1)(B), the district court's decision to hold Jacobs responsible for some of Roberson's drug transactions was not error.

### D.

Jacobs next argues that the district court erred in finding foreseeability, i.e., that the amount of drugs in the conspiracy was foreseeable to him. Once again, however, Jacobs's contentions are based on the implicit assertion that he was not part of the conspiracy. There is sufficient evidence for the jury to find that Jacobs was involved in the conspiracy, and one properly could infer that he introduced Kyles to both Roberson and Cousin and that he

13

knew of Kyles's drug scheme. That in turn permits an inference that the quantity of drugs involved in the conspiracy was reasonably foreseeable. The district court did not err in attributing Roberson's drug quantities to Jacobs.

## E.

Jacobs also avers that the court erred in denying him a downward role adjustment under U.S.S.G. § 3B1.2 for his minimal or minor role in the conspiracy. In support of this, he points to the government's brief in response to Cousin's motion for acquittal, noting that that document did not identify him as a major player in the conspiracy.

Jacobs conspicuously fails to note, however, that it was he who brought the respective buyers and sellers of cocaine together in the first place. Without Jacobs, the transactions simply could not have taken place. One who facilitates a drug transaction by bringing the parties together cannot claim that he is a "minimal" or "minor" participant merely by virtue of having not bought or sold the drugs himself. *See United States v. Tremelling*, 43 F.3d 148, 153 (5th Cir.), *cert. denied*, 115 S. Ct. 1990 (1995). The court did not err in finding that Jacobs was not entitled to a downward departure under § 3B1.2.

## F.

Cousin and Roberson contend that the district court should have applied the rule of lenity in sentencing. That is, they argue

that the sentencing disparity in 21 U.S.C. § 841(b) between "cocaine" and "cocaine base" or "crack cocaine" is based on an ambiguous and scientifically meaningless distinction.

This argument is meritless. As the government points out, this circuit has uniformly rejected challenges to the statutorily mandated sentence enhancement for "crack cocaine."[6] Even assuming, *arguendo*, that the rule of lenity applies in sentencing proceedings, § 841(b) does not contain the sort of grievous ambiguity that would require us to invoke it. *See, e.g., Chapman v. United States*, 500 U.S. 453, 463 (1991) (holding that rule of lenity does not apply absent a "'grievous ambiguity or uncertainty'" in the statute) (quoting *Huddleston v. United States*, 415 U.S. 814, 831 (1974)).

AFFIRMED.

---

[6] *See United States v. Cherry*, 50 F.3d 338, 344 (5th Cir. 1995) (rejecting equal protection challenge); *United States v. Fisher*, 22 F.3d 574, 579 (5th Cir.) (rejecting Eighth Amendment challenge), *cert. denied*, 115 S. Ct. 529 (1994); *United States v. Howard*, 991 F.2d 195, 198 (5th Cir.) (rejecting vagueness challenge), *cert. denied*, 510 U.S. 949 (1993); *United States v. Watson*, 953 F.2d 895, 897-98 (5th Cir.) (rejecting equal protection and due process challenges), *cert. denied*, 504 U.S. 928 (1992); *United States v. Galloway*, 951 F.2d 64, 66 (5th Cir.) (same); *United States v. Thomas*, 932 F.2d 1085, 1090 (5th Cir. 1991) (rejecting vagueness challenge), *cert. denied*, 502 U.S. 895, *and cert. denied*, 502 U.S. 962, *and cert. denied*, 502 U.S. 1038 (1992).