NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3230
_____

UNITED STATES OF AMERICA

v.

SHEVAUN E. BROWNE,
Appellant
_____

No. 12-3231
_____

UNITED STATES OF AMERICA

v.

KADEEM THOMAS,
Appellant
_____

On Appeal from the District Court
of the Virgin Islands
D.C. Criminal No. 3-12-cr-00002-001 & 003
(Honorable Curtis V. Gomez)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 24, 2013

Before:  MCKEE, Chief Judge, SCIRICA, and VANASKIE, *Circuit Judges*.

(Filed:  May 24, 2013)

_____

SCIRICA, *Circuit Judge*.

Defendants Kadeem Thomas and Shevaun Browne appeal their convictions for bank robbery and related offenses. For the reasons that follow, we will affirm.

I.

On January 11, 2011, Kevin Fassale and Kadeem Thomas committed an armed robbery of Merchants Commercial Bank in St. John, Virgin Islands. They fled in a blue SUV, identified by one of the witnesses as belonging to defendant Shevaun Browne. Thomas, Browne, and Fassale were all charged with conspiracy (18 U.S.C. § 1951(a)) and bank robbery (18 U.S.C. § 2113(a) and (d)). Thomas and Fassale were also charged with using a firearm during a crime of violence (18 U.S.C. § 924(c)). Fassale pled guilty and agreed to testify against Thomas and Browne at trial.

During voir dire, the judge asked the potential jurors whether they, a close friend, or a relative had ever been involved with the criminal justice system as a defendant, witness, or victim. Several prospective jurors raised their placards and explained their answer at sidebar, but Juror 93 was not called to sidebar. After the parties exercised their peremptory strikes, defense counsel stated he thought Juror 93 had been shot in a domestic violence incident. The judge called Juror 93 to sidebar, and brought up the question about involvement with the criminal justice system. Juror 93 stated that she had raised her placard, but assumed she had been omitted for some reason. The judge said

they must have missed her, and asked her to explain her involvement.[1] She stated her sister was stabbed in a domestic violence incident and her nephew committed a domestic violence assault, served time in prison, and was no longer incarcerated. Both incidents happened years before. The judge asked if she could remain impartial and apply his instructions as given, and she replied in the affirmative.

Both defendants moved to strike Juror 93 for cause. The judge denied the request. They both then asked the judge to use a peremptory strike against her. The court denied this request because both defendants had already used all their strikes. The defendants offered to withdraw their last strike and use it on Juror 93 instead. The judge denied that request, stating he did not allow "backstriking." Juror 93 ultimately served on the jury and the jury convicted on all charges. These timely appeals followed.[2]

## II.

Both defendants argue the court erred by denying their motion to strike Juror 93 for cause. Alternatively, they argue the court erred by denying their request to withdraw a strike and use it on her.

"We review for abuse of discretion the denial of a motion to strike a juror for cause." *United States v. Mitchell*, 690 F.3d 137, 148 (3d Cir. 2012). "The central inquiry in the determination whether a juror should be excused for cause is whether the juror holds a particular belief or opinion that will 'prevent or substantially impair the

---

[1] Defendants assert she deliberately failed to raise her placard, but the District Court credited her statement that she put it up.

[2] The district court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291.

performance of his duties as a juror in accordance with his instructions and his oath.'" *United States v. Salamone*, 800 F.2d 1216, 1226 (3d Cir. 1986) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)).

We see no abuse of discretion. The domestic violence incidents involving Juror 93's relatives were not recent and were dissimilar to the bank robbery committed by defendants. Additionally, the court asked Juror 93 whether the incidents would affect her impartiality or prevent her from properly applying the law. She replied, "Absolutely not." *Cf. United States v. Polan*, 970 F.2d 1280, 1284 (3d Cir. 1992) (finding no abuse of discretion when court, in a trial for drug distribution, declined to excuse for cause several jurors whose relatives had been involved with drugs). Finally, the trial court credited her statement that she raised her placard but was overlooked, so she was not deliberately withholding information.

The defendants also argue the court erred by not allowing them to withdraw their final peremptory strike and use it on Juror 93. Trial judges have "ample discretion" over how to conduct voir dire. *Salamone*, 800 F.2d at 1224 (quotation omitted). Accordingly, we see no abuse of discretion in generally disallowing "backstrikes." *See United States v. Williams*, 986 F.2d 86, 88 (4th Cir. 1993) (affirming refusal to allow a backstrike, pursuant to local practice, even though defense counsel was unaware of the unwritten practice); *United States v. Anderson*, 562 F.2d 394, 396-97 (6th Cir. 1977) (affirming court's refusal to allow defendant to withdraw strike and use it on a juror he had already accepted). Additionally, if the information about Juror 93 came out after trial, defendants would not be entitled to relief based on an argument they would have used a peremptory

4

strike on her had they known. *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984) (requiring a party to show a juror's answer would have been grounds for a for-cause challenge when the juror fails to honestly answer a question during voir dire).

Considering the ample discretion afforded to district courts over how to conduct voir dire, the permissibility of generally barring backstrikes, and the fact that defendants had already used all their strikes, we cannot say the court abused its discretion. Additionally, the defendants themselves overlooked Juror 93's initial response to the question at issue so, to some extent, they contributed to the late disclosure of her information. The circumstances here, including the information about Juror 93's relatives, are not so compelling for us to conclude that the court abused its discretion by following its practice prohibiting backstriking. The court was not required to allow defendants to withdraw a strike to use on Juror 93.

### III.

Browne argues the evidence was insufficient to support his conviction for conspiracy. "The standard of review is 'particularly deferential' when deciding whether a jury verdict is based on legally sufficient evidence." *United States v. Cothran*, 286 F.3d 173, 175 (3d Cir. 2002) (quoting *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998)). We "view the evidence in the light most favorable to the Government and sustain the verdict if any rational juror could have found the elements of the crime beyond a reasonable doubt." *Id.* The elements of a conspiracy are: (1) the existence of an agreement, (2) an overt act by one of the conspirators in furtherance of the objective, and

(3) an intent on the part of the conspirators to agree. *United States v. Rankin*, 870 F.2d 109, 113 (3d Cir. 1989).

Co-defendant Fassale testified to the following facts. Fassale, Browne, Thomas, and another man met daily over the two weeks prior to the robbery to plan the robbery. Fassale, Browne, and Thomas attempted several times to rob the bank, but called it off for various reasons – for example, because the bank was closed or too crowded. Browne entered the bank to learn its layout and reported back to the other conspirators. Browne provided firearms and allowed Thomas and Fassale to use his car for the robbery. They shared the proceeds afterwards.

Browne argues this testimony is insufficient for a conviction because a conspiracy conviction cannot be based solely on the testimony of a co-conspirator and there is no evidence corroborating Fassale's testimony. We disagree. "In view of the frequent absence of proof of crime other than the account of a participant, a jury should be permitted as a general rule to convict when persuaded of the credibility of the testimony of an accomplice." *United States v. De Larosa*, 450 F.2d 1057, 1060 (3d Cir. 1971); *see also Caminetti v. United States*, 242 U.S. 470, 495 (1917) ("[T]here is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them."). "There is no requirement that testimony by a co-conspirator fulfilling a plea bargain be corroborated by independent evidence." *United States v. Hernandez*, 962 F.2d 1152, 1157 (5th Cir. 1992); *see also United States v. Alvarez*, 358 F.3d 1194, 1201 (9th Cir. 2004) ("[T]he uncorroborated testimony of co-conspirators is sufficient evidence to sustain a conviction unless incredible or unsubstantial on its face." (quotation marks omitted));

6

*United States v. Henderson*, 58 F.3d 1145, 1148-49 (7th Cir. 1995) ("[W]e will uphold a conviction based *solely* on the *uncorroborated* testimony of an accomplice unless his testimony is incredible as a matter of law."). "The jury is entrusted with the responsibility of evaluating the witness's credibility, and uncorroborated testimony of a co-conspirator will sustain a guilty verdict unless, as is not the case here, the testimony is incredible or otherwise insubstantial on its face." *Hernandez*, 962 F.2d at 1157.[3] Accordingly, the evidence was sufficient to convict Browne of conspiracy.

IV.

For the foregoing reasons, we will affirm the judgments of conviction and sentence of Browne and Thomas.

---

[3] In any event, there was corroborating evidence of Browne's participation in the conspiracy: his car was used as the getaway vehicle. Browne presented testimony that he would leave the keys in his car so that his friends could use it. A reasonable jury could reject that testimony and draw the inference that Browne allowed Fassale and Thomas to use his car because he was a co-conspirator.